```
   FILED          RECEIVED
   ENTERED        SERVED ON
              COUNSEL/PARTIES OF RECORD

          DEC 2 8 2010

      CLERK US DISTRICT COURT
        DISTRICT OF NEVADA
BY:_____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| STUART M. ELLIFRITZ et al., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 3:09-cv-00663-RCJ-VPC |
| | ) | |
| NETBANK et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case arises out the foreclosure of Plaintiffs Stewart and Theresa Ellifritz's mortgage. Pending before the Court are seven motions: two motions to dismiss, a motion to remand, two motions to stay, a motion to amend, and a motion to expunge lis pendens. Plaintiffs have not responded to the motions to dismiss but have filed notices that they intend not to respond until their motion to remand is resolved.[1] For the reasons given herein, the Court denies the motions to remand, stay, amend, and expunge lis pendens, and grants the motions to dismiss in part and denies them in part.

///

///

---

[1] This constitutes consent to granting the motions. L.R. Civ. Prac. 7-2(d). Defendants surely would have filed the same motions to dismiss had the case not been removed. In fact, Plaintiffs would only have had ten (10) days to respond to those motions in state court before failure to respond constituted consent to granting the motions, *see* Nev. Dist. Ct. R. 13(3), whereas they had fifteen (15) days to respond in this Court, *see* L. R. Civ. Prac. 7-2(b), (d). Removal had the effect of giving Plaintiffs an additional five days to respond to the inevitable motions. There is no legitimate excuse for failing to respond.

I.    **FACTS AND PROCEDURAL HISTORY**

    A.    **The Brookdale Property**

On August 11, 2006, Plaintiffs Stuart and Theresa Ellifritz gave lender NetBank a promissory note in the amount of $300,000 to purchase real property located at 5789 West Brookdale Drive, Reno, NV 89523 ("the Brookdale Property"), secured by a deed of trust ("DOT") against the Brookdale Property. (*See* DOT 1–3, Aug. 11, 2006, ECF No. 14, at 30). The trustee on the DOT is Stewart Title Co. ("Stewart"). (*See id.* 2). Mortgage Electronic Registration Systems, Inc. ("MERS") is listed as "nominee" and "beneficiary." (*See id.*).

On March 19, 2009, an employee of LSI Title Agency, Inc. ("LSI"), as agent for Regional Service Corp. ("RSC") signed a notice of default and election to sell ("NOD") and recorded it on March 23, 2009. (*See* NOD 1–2, Mar. 19, 2009, ECF No. 14, at 54). On March 23, 2009, MERS purported to assign all beneficial interest in the loan to IndyMac Federal Bank FSB ("IndyMac"). (*See* Assignment, Mar. 23, 2009, ECF No. 14, at 57). On April 28, 2009, IndyMac substituted RSC as trustee under the DOT. (*See* Substitution of Trustee, Apr. 28, 2009, ECF No. 14, at 59).

This sequence of events indicates a statutory defect in foreclosure that will support an injunction against sale unless and until cured, *see* Nev. Rev. Stat. § 107.080(2)(c), because RSC caused LSI to file the NOD while by all accounts RSC was still a stranger to the mortgage. Not until five weeks after it caused LSI to execute the NOD did RSC become the trustee. As the Court has discussed in previous cases, it is also unclear that the scope of MERS' agency extends to transferring the beneficial interest in loans based purely on its designation as a lender's "nominee" in a deed of trust, and MERS is not in reality a beneficiary itself despite the language in the deed of trust that proclaims it to be so, so IndyMac may not have had the power to substitute RSC as trustee even in April.

On June 24, 2009, RSC executed a notice of trustee's sale ("NOS") for July 15, 2009. (*See* NOS, June 24, 2009, ECF No. 14, at 63). It is not clear whether RSC sold the Brookdale

1   Property.  On July 20, 2009, IndyMac purported to assign the beneficial interest in the loan to

2   HSBC Bank USA ("HSBC"). (*See* Assignment, July 20, 2009, ECF No. 14, at 61).

3       **B.**    **The Sage Grouse Property**

4         On August 18, 2006, exactly one week after they purchased the Brookdale Property,

5   Plaintiffs gave lender NetBank a promissory note in the amount of $384,000 to purchase real

6   property located at 6540 Sage Grouse Ct., Reno, NV 89523 ("the Sage Grouse Property"),

7   secured by a DOT against the Sage Grouse Property. (*See* DOT 1–3, Aug. 18, 2006, ECF No. 14,

8   at 65).  The trustee on the DOT is Theresa K. Gould. (*See id.* 2).  MERS is listed as "nominee"

9   and "beneficiary." (*See id.*).

10         On October 14, 2009, an employee of either MTDS, Inc. or First American Title

11   Insurance Co. ("First American")—it is difficult to tell from the signature block—signed a notice

12   of default and election to sell ("NOD") and recorded it on October 15, 2009. (*See* NOD 1–2, Oct.

13   14, 2009, ECF No. 14, at 85).  Although the NOD includes the standard boilerplate that the

14   foreclosing entity is acting on behalf of the "Trustee or Beneficiary," there is no evidence of this

15   in the document or elsewhere in the record.  There is no evidence indicating when MTDS or First

16   American were ever substituted as trustee.  Without more, this sequence of events indicates a

17   potential statutory defect in foreclosure that will support an injunction against sale unless and

18   until cured for the reasons discussed above.

19         Plaintiffs sued Defendants NetBank; Merscorp, Inc.; MERS; RSC; HSBC; IndyMac; D.

20   Brad Betker; and Gould in state court, asserting fourteen causes of action.  Defendants removed.

21   The case was transferred to Case No. 2:09-md-02119-JAT in the District of Arizona, and this

22   Court stayed the case pending remand.  In accordance with the Judicial Panel on Multidistrict

23   Litigation's ("JPML") partial remand order, Judge Teilborg has determined that the first cause of

24   action and part of the third, fourth, and tenth through twelfth causes of action (insofar as they do

25   not concern MERS) have been remanded to this Court. (*See* Am. Order 8:12–18, June 4, 2010,

1    ECF No. 25).  The Court may therefore rule on the following causes of action without a risk of

2    inconsistent rulings by the MDL court: (1) Unfair Lending Practices Under Nevada Revised

3    Statutes ("NRS") Section 589D.100; (3) Injunctive Relief; (4) Declaratory Relief; (10) Civil

4    Conspiracy; (11) Racketeering Under NRS Section 207.470; and (12) Unjust Enrichment.

5    **II.      LEGAL STANDARDS**

6         **A.      Remand for Lack of Subject Matter Jurisdiction**

7              Federal courts are courts of limited jurisdiction, possessing only those powers granted by

8    the Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008)

9    (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  The party

10   asserting federal jurisdiction bears the burden of overcoming the presumption against it.

11   *Kokkonen*, 511 U.S. at 377.  Federal Rule of Civil Procedure 12(b)(1) provides an affirmative

12   defense for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  Additionally, a court

13   may raise the question of subject matter jurisdiction sua sponte at any time during an action.

14   *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003).  Regardless of who raises

15   the issue, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must

16   dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing

17   16 J. Moore et al., Moore's Federal Practice § 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)).

18             A district court's jurisdiction extends to cases removed from state court under particular

19   circumstances. 28 U.S.C. § 1441(b) ("Any civil action of which the district courts have original

20   jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the

21   United States shall be removable without regard to the citizenship or residence of the parties.

22   Any other such action shall be removable only if none of the parties in interest properly joined

23   and served as defendants is a citizen of the State in which such action is brought.").  In cases

24   removed from state court, a federal court later finding a lack of subject matter jurisdiction does

25   not dismiss, but must remand to state court. 28 U.S.C. § 1447(c).  A decision to remand a case

1  removed on any other basis than civil rights removal jurisdiction under 28 U.S.C. § 1443 "is not

2  reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).

3       A defect in removal exists where jurisdiction is predicated purely on diversity and one or

4  more defendants is a citizen of the forum state. *See* § 1441(b).  This is the "forum defendant"

5  rule.  However, the citizenship of a defendant who has been fraudulently joined is discounted.

6  *Ritchie v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  Where fraudulent joinder is

7  alleged, a court does not take the allegations of citizenship in the complaint as true but permits

8  the defendant seeking removal to present facts showing fraudulent joinder. *See id.*  "Joinder is

9  fraudulent [i]f the plaintiff fails to state a cause of action against a resident defendant, and the

10  failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris* USA, 582

11  F.3d 1039, 1043 (9th Cir. 2009) (citations and internal quotation marks omitted) (alteration in

12  original).

13      **B.**    **Rule 12(b)(6)**

14       Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

15  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

16  what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

17  (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

18  that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

19  12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

20  F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

21  failure to state a claim, dismissal is appropriate only when the complaint does not give the

22  defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

23  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

24  sufficient to state a claim, the court will take all material allegations as true and construe them in

25  the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

1    Cir. 1986). The court, however, is not required to accept as true allegations that are merely

2    conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

3    *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action

4    with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

5    is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly v.*

6    *Bell Atl. Corp.*, 550 U.S. 554, 555 (2007)).

7        "Generally, a district court may not consider any material beyond the pleadings in ruling

8    on a Rule 12(b)(6) motion. . . . However, material which is properly submitted as part of the

9    complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

10   *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents

11   whose contents are alleged in a complaint and whose authenticity no party questions, but which

12   are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

13   motion to dismiss" without converting the motion to dismiss into a motion for summary

14   judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule

15   of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

16   *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court

17   considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

18   summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.

19   2001).

20   **III.    ANALYSIS**

21       **A.    Motions to Remand and to Stay**

22       The Court denies the motion to remand. Plaintiffs have sued two non-diverse, forum-

23   resident Defendants: Betker and Gould (collectively, "the Individual Defendants"). They are

24   fraudulently joined, however, and their joinder therefore does not defeat diversity.

25       An agent is personally liable to third parties for his own torts, regardless of whether he is

1  acting on behalf of a corporate principal within the scope of his employment, but unless the agent

2  and the third party agree, the agent is not liable on contracts entered into by the agent on behalf of

3  the principal where the principal is disclosed. *See* Restatement (Third) of Agency § 7.01 & cmt. b

4  (2006).  Agents in Nevada can be personally liable in tort for misrepresentations they make to

5  third parties. *See Nev–Tex Oil & Gas v. Precision Rolled Prods.*, 782 P.2d 1311, 1311 (Nev.

6  1989) (citing *Carrell v. Lux*, 420 P.2d 564, 576 (Ariz. 1966); *Pentecost v. Harward*, 699 P.2d

7  696, 699 (Utah 1985)).  Although the Nevada Supreme Court has not directly ruled on the

8  question, the states appear to be in agreement that an agent cannot be liable on a contract entered

9  into on behalf of a principal where the agent has disclosed the principal. *See, e.g., Eppler, Guerin*

10  *& Turner, Inc. v. Kasmir*, 685 S.W.2d 737, 738 (Tex. 1985); *Rathbon v. Budlong*, 15 Johns. 1,

11  2–3 (N.Y. 1818) (holding that an employee of a company could not be not liable in contract for

12  actions taken on behalf of corporation).

13          Betker cannot be liable in contract here, because he is alleged only to have acted as an

14  agent for one or more institutional Defendants. (*See* Compl. ¶ 38).  Furthermore, he is alleged

15  only to have "participated in the procurement, drafting, or presentment of the documents and

16  transactions creating the causes of action alleged herein." (*Id.*).  This is not enough to state a tort

17  claim against him under *Iqbal* and *Twombly* because it is not a tort to "participate[] in the

18  procurement, drafting, or presentment of [loan and mortgage] documents."  There are no factual

19  allegations indicating how Betker is liable for any tort due to this activity.  It is consistent with

20  the Complaint that Betker merely handed papers to Plaintiffs to sign, without even knowing

21  much about what was in them or having any intent to defraud.  It is also consistent with the

22  Complaint that he merely printed copies of the documents or performed some other innocuous

23  task touching upon the documents that would not possibly give rise to tort liability.  The Court

24  finds that Betker is fraudulently joined.

25          The same insufficient allegation is made against Gould, (*see id.* ¶ 39), except an

1   additional allegation is made that she was the trustee on one of the deeds of trust, (*see id.*).

2   Gould was indeed the trustee on the Sage Grouse DOT.  However, she is not alleged to have

3   personally engaged in any wrongdoing in this capacity.  The foreclosing entity with respect to the

4   Sage Grouse Property appears to have wrongfully foreclosed precisely because there is no

5   evidence anyone but Gould was the trustee when it filed the NOD.  If Plaintiffs mean to allege

6   that Gould in fact instructed the foreclosing entity to foreclose, they will have admitted facts

7   sufficient to find that the filing of the NOD was proper, and even their claims for injunctive and

8   declaratory relief as to the Sage Grouse Property would fail. *See* Nev. Rev. Stat. § 107.080(2)(c).

9   The Court finds that Gould is fraudulently joined and deny the motion to remand.

10          Even if remand were otherwise appropriate, part of the case is still pending in the MDL

11  case in the District of Arizona, and a remand order applying only to certain causes of action in

12  the case would be a procedural catastrophe.  Finally, the motions to stay are denied as moot

13  because they simply request a stay until a ruling on the present motion to remand, or until the

14  transfer decision by the JPML, respectively.

15          **B.      Motions to Dismiss**

16          **1.      Unfair Lending Practices Under NRS Section 598D.100**

17          Plaintiffs allege that they were preyed upon because the lender didn't scrutinize their

18  income closely enough.  Plaintiffs obtained the loans in the present case on August 11 and 18,

19  2006.  The statute of limitations under section 598D.100 is three years, *see* Nev. Rev. Stat.

20  § 11.190(3)(a), and the present case was brought on September 30, 2009.  The statute of

21  limitations therefore bars this cause of action as to both properties.  Plaintiffs argue the

22  limitations period should be tolled because they just recently became aware that Defendants'

23  actions constituted violations of section 598D.100.  Plaintiffs conflate the date of the discovery

24  of facts sufficient to draw a conclusion with the date one actually draws a conclusion.  Time is

25  tolled until a litigant has or should have the facts necessary to draw a legal conclusion, not until

1   he actually draws the conclusion.  Plaintiffs admit they had the information required to draw the

2   relevant conclusions of law more than three years before they brought the action, because they

3   necessarily knew what information they themselves had given to the lender to support their

4   mortgage applications.  Furthermore, the pre-2007 statute did not apply to mortgages that

5   qualified as residential mortgage transactions under HOEPA, as here, where a security interest is

6   retained against the property to finance its acquisition or construction. *See* Nev. Rev. Stat,

7   § 598D.040 (2005); 15 U.S.C. § 1602(aa)(1), (w).

8          Finally, section 598D.100 was amended in 2007, with an effective date of June 13, 2007.

9   *See* 2007 Nev. Stat. 2844–46.  Therefore, the pre-2007 version of the statute applies to the

10  present case.  The prior statute, which applies here, made it actionable if a lender made "a home

11  loan to a borrower based solely upon the equity of the borrower in the home property and without

12  determining that the borrower has the ability to repay the home loan from other assets . . . ." Nev.

13  Rev. Stat. § 598D.100 (2006).  Plaintiffs claim that the loan was based on "stated income" with

14  no verification of that income.  Plaintiffs do not allege whether they in fact incorrectly stated

15  their income on the loan documents.  Moreover, the statute does not require any particular

16  verification method, but only a determination of the ability of the borrower to repay from assets

17  other than an estimated future increase in equity.  Plaintiffs appear to admit that the lender gave

18  them the loan based on the income they reported to the lender.  This is sufficient under the

19  statute.  "The lender should have known I was lying about my income" is not a particularly

20  convincing argument, at least not under the pre–2007 version of the statute.  A lender has the

21  right to presume the borrower is not lying on his application.  The lender bears the risk in this

22  regard, because the lender will realize the loss upon foreclosure.  Such a practice may indeed be

23  reckless, but it is reckless on the part of both the lender and the borrower, and the lender may

24  bear this risk if it wishes to.  Under the post-2007 version of the statute, which requires a

25  "commercially reasonable means" of determining the ability to repay, an argument could be

Page 9 of 13

1   made that a lender who does not verify stated income beyond the signature of the borrower has

2   not fulfilled its duties under the statute even where the borrower himself is also guilty of

3   mortgage fraud for having falsely reported his income, but the pre-2007 version of the statute

4   applies in this case.  The Court dismisses this cause of action.

5        **2.        Injunctive and Declaratory Relief**

6        The Court denies the motion to dismiss as to these causes of action, because there

7   remains a question of fact as to a statutory defect in foreclosure with respect to both properties in

8   this case. *See* Nev. Rev. Stat. § 107.080(2)(c).  The entity who filed the Brookdale Property NOD

9   is not the original trustee or beneficiary, and the available evidence tends to show that the entity

10  who filed the NOD did so before being appointed as trustee.  The entity who filed the Sage

11  Grouse NOD was not the original trustee, and there is no evidence indicating that the entity has

12  ever been named as the trustee.  Although an affirmative claim for damages for wrongful

13  foreclosure does not lie where there is a default, a statutory defect in a non-judicial foreclosure

14  will support injunctive and declarative relief.

15       **3.        Civil Conspiracy**

16       "An actionable civil conspiracy is a combination of two or more persons who, by some

17  concerted action, intend to accomplish some unlawful objective for the purpose of harming

18  another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622

19  (Nev. 1994) (citing *Wise v. S. Pac. Co.*, 35 Cal. Rptr. 652 (Ct. App. 1963); *Bliss v. S. Pac. Co.*,

20  321 P.2d 324 (Or. 1958)).  A corporation cannot conspire with its employees in their official

21  capacities. *Id.*

22       Plaintiffs allege a conspiracy between the institutional Defendants, but they allege no

23  specific agreement.  Plaintiffs allege only that one or more Defendants "failed to inform Nevada

24  mortgagors of their rights . . . based on the false premise fraud by omission has not occurred."

25  (*See* Compl. ¶ 100).  This alleges no agreement, much less an agreement to engage in unlawful

1  activity, and it does not even identify Plaintiffs as the particular victims of the alleged conspiracy.

2  Next, Plaintiffs allege that several Defendants "continue to eject Nevadans from their home [sic]

3  notwithstanding knowledge of their own illegal conduct and unclean hands . . . ." (*Id.*).  This does

4  not cure the deficiencies.  No agreement is pled.  The Court dismisses this cause of action (as to

5  the non-MERS Defendants).

6  **4.      Racketeering Under NRS 207.470**

7  Under Nevada's RICO statute, a private party can bring a civil action for treble damages,

8  attorney's fees, and costs for injures sustained by a violation of section 207.400. *See* Nev. Rev.

9  Stat. § 207.470.  Plaintiffs allege Defendants engaged in racketeering.  Plaintiffs, however,

10  nowhere identify which unlawful act under section 207.400 they believe Defendants to have

11  committed.  Plaintiffs simply quote the definition of "racketeering" under section 207.390 and

12  allege that Defendants engaged in racketeering through predatory lending practices.  Plaintiffs

13  have not identified two predicate offenses required to constitute "racketeering." *See* § 207.390.

14  Such crimes include murder, manslaughter, mayhem, certain batteries, kidnapping, sexual

15  assault, arson, robbery, extortion, seduction, forgery, burglary, grand larceny, bribery, assault

16  with a deadly weapon, certain frauds, etc. *See* § 207.360.  If the predicate offenses are intended to

17  be frauds, they are not pled sufficiently under Rule 12(b)(6), much less under Rule 9(b).  The

18  Court dismisses this cause of action (as against the non-MERS Defendants).

19  **5.      Unjust Enrichment**

20  In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a

21  benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the

22  defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances

23  where it would be inequitable to retain the benefit without payment. *See Leasepartners Corp.,*

24  *Inc. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica v.*

25  *McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (quoting *Dass v. Epplen*, 424 P.2d 779, 780 (Colo.

1   1967))). Unjust enrichment is an equitable substitute for a contract, and an action for unjust

2   enrichment therefore cannot lie where there is an express written agreement. *See Marsh*, 839

3   P.2d at 613 (citing *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977); 66 Am. Jur. 2d

4   *Restitution* §§ 6, 11 (1973)).

5         Here, Plaintiffs specifically allege contracts. Those contracts, the notes and deeds of

6   trust, specify their terms. Plaintiffs do not allege any benefit bestowed upon any Defendant that

7   is not subject to a contract. The Court dismisses this cause of action (as against the non-MERS

8   Defendants).

9                                    **CONCLUSION**

10        IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 5) is DENIED.

11        IT IS FURTHER ORDERED that the Motions to Stay (ECF Nos. 6, 17) are DENIED as

12  moot.

13        IT IS FURTHER ORDERED that the Motion to Amend (ECF No. 24) is DENIED.

14        IT IS FURTHER ORDERED that the Motions to Dismiss (ECF Nos. 14, 28) are

15  GRANTED as to the first cause of action, GRANTED as to the tenth through twelfth causes of

16  action with respect to the non-MERS Defendants, DENIED as to the third and fourth causes of

17  action, and DENIED as to the remaining causes of action for lack of jurisdiction, as these

18  currently remain with Judge Teilborg in Case No. 2:09-md-02119-JAT in the District of Arizona.

19        IT IS FURTHER ORDERED that the Motion to Expunge Lis Pendens (ECF No. 34) is

20  DENIED.

21        IT IS FURTHER ORDERED that Defendants will cease foreclosure proceedings for one-

22  hundred (100) days. During this period, Plaintiffs will make full, regular monthly payments

23  under the note every thirty (30) days, with the first payment due fifteen (15) days after the date of

24  this order. Plaintiffs need not pay late fees or cure the entire amount of past default at this time.

25

1   Failure to make monthly payments during the injunction period, however, will result in a lifting

2   of the injunction.

3          IT IS FURTHER ORDERED that during the injunction period Defendants will conduct a

4   private mediation with Plaintiffs in good faith.  This means the beneficiary must send a

5   representative to the mediation who has actual authority to modify the note, although actual

6   modification is not required.

7          IT IS FURTHER ORDERED that Plaintiffs will provide requested information to

8   Defendants in advance of the mediation in good faith.

9          IT IS SO ORDERED.

10         Dated: December 28, 2010

11

12                                    _____
                                      ROBERT C. JONES
13                                    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25